UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID J. TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-00761-TWP-MJD |
| | ) |
| RAY DUDLEY, Sheriff | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT AND ORDER TO SHOW CAUSE**

This matter is before the Court on cross-motions for summary judgment. Plaintiff David Turner ("Mr. Turner") was confined at the Delaware County Jail ("the Jail") from October 2018 until April 2019. In this prisoner civil rights case, Mr. Turner alleges the Defendant Ray Dudley ("Sheriff Dudley") subjected him to inhumane conditions and deprived him of adequate medical care during that time. Both parties have moved for summary judgment. (Dkt. 33; Dkt. 43.) For the reasons discussed in this Entry, Mr. Turner's Motion must be **denied** and Sheriff Dudley's Motion is **granted in part and denied in part**. Sheriff Dudley is entitled to summary judgment on all claims, and Mr. Turner is given an opportunity to show cause why the Court should not dismiss the action and enter final judgment.

**I. PROCEDURAL BACKGROUND**

Mr. Turner's Amended Complaint describes several problematic conditions at the Jail, including overcrowding, understaffing, plumbing and ventilation problems. (Dkt. 6.) He also alleges that he was deprived of adequate medication for his diabetes. *Id.* The Court specifically acknowledges that "Sheriff Ray Dudley is responsible for the Jail's operations, knows of these[] conditions, and has failed to take action to rectify them." (Dkt. 7 at 2.)

> The Court screened the Amended Complaint and identified the following claims:
>
> The facts alleged in the amended complaint support a reasonable inference that Sheriff Dudley is confining Mr. Turner under conditions that deprive him of one or more basic human needs and amount to "punishment." *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Smith v. Dart*, 803 F.3d 304, 309–310 (7th Cir. 2015). The action **shall proceed** with a claim against Sheriff Dudley pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment.

*Id.* at 2–3 (footnote omitted; emphasis in original).)

Sheriff Dudley answered the Amended Complaint and asserted affirmative defenses on July 2, 2019. (Dkt. 13.) However, he did not assert the affirmative defense that Mr. Turner failed to exhaust administrative remedies. *Id.*

Against this background, two problems complicate Sheriff Dudley's Motion for Summary Judgment.

First, Sheriff Dudley relies heavily on the exhaustion defense, which he has already waived. (*See* Dkt. 36.) Accordingly, the Court will not consider failure-to-exhaust arguments in this Entry. Second, Sheriff Dudley's summary judgment motion "interprets Plaintiff's claims as being against the Sheriff of Delaware County in his official capacity." (Dkt. 34 at 1 n.1.) Due to that interpretation, Sheriff Dudley's Motion addresses the theory of liability announced in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). This interpretation ignores both the Court's screening order (which explicitly identified claims based on Sheriff Dudley's personal knowledge and involvement) and the Amended Complaint itself (which makes no allegations regarding departmental policies, practices, or customs). Thus, in ruling on the parties' Motions, the Court considers the personal-liability claims identified at screening—not the municipal liability claims that Sheriff Dudley has injected into the action at this late stage.

## II.  FACTUAL BACKGROUND

Mr. Turner was confined in the Jail as a pretrial detainee from October 2018 until April 2019.  (Dkt. 39-1 at 8:2–6.)  During this time, the Jail did not separate inmates from one another based on the severity of their crimes.  *Id.* at 10:9–10.  Mr. Turner felt "[v]ery unsafe" and experienced "constant fear" as a result of this arrangement.  *Id.* at 11:22.  However, he was never assaulted by another inmate.  *Id.* at 14:10–11.

For at least part of his time at the Jail, Mr. Turner was housed with approximately 20 inmates in a space designed for 10 or 12 inmates.[1]  *Id.* at 14:23–15:2.  For one to two months, he was housed with between 30 and 50 inmates in a gym.  *Id.* at 17:12–18.  These inmates shared two toilets and one shower.  *Id.* at 17:13–16.  These units were so crowded that Mr. Turner had "no room to stretch [his] legs" and "nowhere to sit" except his bed.  *Id.* at 17:8–11.  Mr. Turner always had his own bed, although sometimes his bed was a plastic "boat" that held a sleeping mat.  *Id.* at 15:3–4, 17:19–18:7.

The Jail regularly experienced plumbing problems during Mr. Turner's time there.  *Id.* at 15:7–15.  When these problems occurred, they took hours or even days to repair.  *Id.* at 16:2–3.  However, Mr. Turner was never completely without toilet access, as he was able to find inmates who would let him use the toilets in their cells.  *Id.* at 16:4–10.

When Mr. Turner was housed in the gym, the staff left the "lights on 24 hours a day," and there were "no windows."  *Id.* at 17:13–16.  No evidence provides any information about how bright the lights were or whether they interfered with Mr. Turner's sleep.  Similarly, no evidence

---

[1] It is not clear that Mr. Turner has personal knowledge of the capacity of the Jail or any of its subparts. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Yet, Mr. Dudley has not presented contrary evidence, so the Court accepts Mr. Turner's assertions regarding the Jail's capacity for purposes of summary judgment.

clarifies whether Mr. Turner was able to spend time in parts of the Jail with windows during the time he was housed in the gym.

Mr. Turner was diagnosed with Type 1 Diabetes in 2017, before this period of incarceration at the Jail. (Dkt. 39-1 at 19:13–14.) His blood sugar levels were not well-regulated at any point during his six months at the Jail. *Id.* at 22:17–24.

Mr. Turner was supposed to receive meals specific to his needs as a person with Diabetes. *Id.* at 23:2–4. Sometimes, he received a meal tray that did not meet his needs. Mr. Turner states that this occurred "[p]retty frequently," but no evidence clarifies how many times he was deprived of a diabetic meal his six-month stay at the Jail. *See id.* at 23:5–9.

Diabetic inmates also received evening snacks. *Id.* at 24:2–3. Approximately twice per week, Mr. Turner did not receive his snack until late at night. *Id.* at 24:21–25. When this occurred, his blood sugar level would drop, and he would have to be taken to the nurse's office and given fruit, juice, or glucose tablets. *Id.* at 24:13–18. In December 2018, Mr. Turner had a seizure because his blood sugar level became too low. *Id.* 19:24–20:10.

When Mr. Turner's blood sugar level dropped too low, he needed an officer to let him out of his housing unit and take him to the nurse's office. *Id.* at 25:24–26:2. If there was not an officer in his unit, he had to wait for one to pass through. *Id.* at 20:23–21:4. If he was housed in a cell, he or another inmate would have to bang on the door—risking punishment—and wait for an officer to respond. *Id.* at 20:17–22. Sometimes, officers responded but then ignored Mr. Turner's requests for help. *Id.* at 21:5–7, 26:2–4.

### III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of

4

Civil Procedure 56(a).  "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted).  "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor.  *See Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 628 (7th Cir. 2018).  When a party moving for summary judgment asserts facts and supports them with admissible evidence, the court treats those facts as admitted without controversy unless the non-movant specifically controverts them with admissible evidence, shows the movant's assertions are not supported by admissible evidence, or demonstrates that the factual record leaves a material factual dispute.  S.D. Ind. L.R. 56-1(f)(1).

## IV.  DISCUSSION

The Fourteenth Amendment protected Mr. Turner, as a pretrial detainee, from being subjected to conditions or actions that were objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015); *Hardeman v. Curran*, 933 F.3d 816, 822–23 (7th Cir. 2019).  For purposes of this analysis, Mr. Turner's allegations fall into three groups:  his confinement alongside inmates with more serious offenses; his confinement under inhumane conditions; and his access to food and medical treatment for Diabetes.

Each group of allegations requires different analysis, but each yields the same result.  No evidence would allow a reasonable jury to find that Sheriff Dudley violated Mr. Turner's Fourteenth Amendment rights.  The Court will analyze each group in turn.

A. **Failure to Separate Inmates**

Mr. Turner first asserts that Sheriff Dudley violated his Fourteenth Amendment rights by housing him in the same unit as other inmates charged with more serious offenses. (Dkt. 39-1 at 10:9–10.) Unfortunately for Mr. Turner, Jail administrators enjoy "wide-ranging deference . . . in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). This includes policies and practices regarding classification and housing of inmates. *See Smith v. Sangamon Cty. Sheriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013) (holding that the sheriff's department had discretion to consider classification factors beyond inmates' pending charges and criminal histories). Thus, Sheriff Dudley's failure to separate inmates based on the nature or severity of their charges was not inherently unreasonable. Moreover, Mr. Turner has not presented any evidence that specific aspects of the Jail's housing and classification arrangements were unreasonable.

To be sure, Mr. Turner had a right to be protected against violence by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). However, Mr. Turner concedes that he was never actually assaulted by an inmate during his time at the Jail. (Dkt. 39-1 at 14:10–11.) Therefore, his housing arrangements did not infringe upon his right to be protected from violence.

B. **Inhumane Conditions**

"It has been clearly established for decades that prisons must provide inmates with 'the minimal civilized measure of life's necessities.'" *Hardeman*, 933 F.3d at 820 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Conditions-of-confinement claims are "fact-intensive" and "generally require[] the development of a factual record." *Budd v. Motley*, 711 F.3d 840, 843 (7th

6

Cir. 2013) ("Moreover, the fact-intensive inquiry into the inadequate heating, the severity of the resulting cold, and the duration of the inmate's exposure to it generally requires the development of a factual record."). For example,

> a single clogged toilet does not violate the Constitution, and prisoners are not entitled to Fiji Water on demand. But on the other end of the spectrum, a defendant cannot purposefully deny water until a prisoner is on the brink of death or force a prisoner permanently to live surrounded by her own excrement and that of others.

*Hardeman* 933 F.3d at 823–24.

Here, the record forms only a sparse outline of a conditions-of-confinement claim. Mr. Turner has not presented any evidence that he was deprived of bare essentials of civilized life. Mr. Turner states that toilets in the Jail were frequently out of order, but he concedes that he always was able to find a toilet to use. He states that his housing unit was overcrowded, but he concedes that he always had a bed and a place to sit and eat his meals. He states that he once was housed in a gym where there were no windows and the lights stayed on all night, but he stops short of stating that he was confined to that unit all day long or that the lights deprived him of sleep.

In fact, the record contains only one specific statement of how conditions at the Jail negatively affected Mr. Turner: the Jail was so crowded that he had "no room to stretch [his] legs" and "nowhere to sit" except his bed. *Id.* at 17:8–11. But it is well-settled that "[t]he Constitution 'does not mandate comfortable prisons.'" *Farmer*, 511 U.S. at 832 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). Mr. Turner has described uncomfortable conditions—not conditions devoid of basic necessities. *See Hardeman*, 933 F.3d at 820.

Mr. Turner's undeveloped statements sufficed at the pleading stage. However, a motion for summary judgment is the "'put up or shut up' moment in a lawsuit" and "requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v.*

7

*Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). If Mr. Turner had filed an affidavit stating what specific hardships he suffered because of overcrowding or clogged toilets or how having lights on all night affected him, the outcome may be different. He has not identified specific evidence that would allow a jury to find that he was deprived of a basic necessity of civilized life, so these claims must be dismissed.

### C. Meals and Treatment for Diabetes

A trier of fact faced with a Fourteenth Amendment medical care claim must determine "whether a defendant acted purposefully, knowingly, or recklessly, and if so, whether the challenged conduct was objectively unreasonable." *Green v. Beth*, 770 F. App'x 273, 275 (7th Cir. 2019) (citing *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018); *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018)). Mr. Turner's claims that he was deprived of sufficient food and medical treatment he needed for his Diabetes benefits from a stronger factual record than his other claims. He has presented evidence that he sometimes did not receive diabetic meal trays, that he routinely received his evening snack too late, that he had a seizure due to low a blood sugar level, and that officers often ignored his requests to be escorted to the nurse's office, if they were ever in position to hear those requests.

The Court assumes for purposes of these summary judgment motions that the record includes evidence that members of the Jail staff acted purposefully, knowingly, or recklessly with respect to Mr. Turner's meals and his Diabetes, that their actions were objectively unreasonable, and that they caused the injuries he describes in the Amended Complaint. Even so, Sheriff Dudley is entitled to summary judgment.

Mr. Turner has sued only one defendant—Sheriff Dudley—and he has sued that defendant in his individual capacity. "Liability under [42 U.S.C.] § 1983 is direct rather than vicarious;

supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). "Only someone personally responsible in a constitutional violation can be held liable under § 1983." *Wojcik v. Cook Cnty.*, 803 F. App'x 25, 27 (7th Cir. 2020) (citing *Wilson v. Warren Cnty., Ill.*, 830 F.3d 464, 469 (7th Cir. 2016)).

No evidence indicates that Sheriff Dudley was personally involved in distributing meals or snacks to inmates, that he refused a request from Mr. Turner to be taken to the nurse's office, or that he was ever personally responsible for monitoring an area of the Jail where Mr. Turner was confined and unable to gain an officer's attention. No evidence would allow a jury to conclude that Sheriff Dudley even knew of these problems—much less that they resulted from unreasonable actions that he took personally.

Sheriff Dudley has not asserted a lack of personal involvement as a basis for summary judgment. Thus, instead of awarding summary judgment on this basis, the Court orders Mr. Turner to show cause why it should not do so.

## V. CONCLUSION

Plaintiff David J. Turner's Motion for Summary Judgment, Dkt. [43], is **DENIED**. Defendant Ray Dudley's Motion for Summary Judgment, Dkt. [33], is **GRANTED in part and DENIED in part.** It is **granted** as to the claims regarding failure to separate inmates and inhumane conditions at the Delaware County Jail, and it is **denied** as to the claims concerning the meals and treatment for Mr. Turner's Diabetes. Pursuant to Federal Rule of Civil Procedure 56(f)(2), Mr. Turner shall have **through Monday, April 19, 2021**, to **show cause** why the Court should not grant Sheriff Dudley summary judgment on the remaining claims for the reasons discussed in Part IV(C)—namely, that no evidence shows Sheriff Dudley was personally involved in depriving Mr.

9

Turner of meals and treatment for his Diabetes. No other issues are pending, and Mr. Turner should not address any other issues in his response to the show cause order. Sheriff Dudley shall have **fourteen (14) days** to respond to Mr. Turner's filing.

    **SO ORDERED.**

Date: 3/19/2021

                                                 Hon. Tanya Walton Pratt, Judge
                                                 United States District Court
                                                 Southern District of Indiana

DISTRIBUTION:

DAVID J. TURNER, #223120
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Daniel Mark Witte
TRAVELERS STAFF COUNSEL INDIANA
dwitte@travelers.com